UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO: 3:19-CV-00717-MOC-DCK

| | |
|---|---|
| MISHELLE LOZANO LOCKERBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CROSS POINT NC PARTNERS, LLC, d/b/a ) | |
| SARDIS PLACE AT MATTHEWS, and ) | |
| CORTLAND MANAGEMENT, LLC, ) | |
| ) | |
| Defendants, ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendants' Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 47). Plaintiff has responded in opposition and Defendants have filed a reply. (Doc. Nos. 52, 60). At the Court's request, each party has additionally filed a supplemental brief. (Doc. Nos. 67, 68). For the following reasons, Defendants' motion is **GRANTED**.

## I. BACKGROUND

This case concerns whether tenants can recover damages from landlords who charged them eviction-related expenses that were not authorized by statute at the time, but later became authorized, through explicitly retroactive amendments to the statute by the North Carolina General Assembly.

### a. Plaintiff's Allegations

Plaintiff is a former tenant of the multiunit residential apartment complex known as Sardis Place at Matthews ("Sardis Place") and has brought a proposed putative class action in relation to certain fees, costs, and expenses assessed by Defendants to tenants in relation to

defaults under their respective leases and resultant eviction proceedings in North Carolina. Defendant Cross Point owns and operates Sardis Place for the benefit of Defendant Cortland Management. See (Doc. No. 1-1, Am. Compl. ¶ 13).

From around December 2015 until March 2019, Plaintiff rented an apartment from Defendants. (Id. at ¶ 89). Over that period, Plaintiff executed two leases with Defendant Cross Point. The first lease was effective December 2015 and the second was effective April 2018. (Doc. No. 1-1, Ex. 1 and 2).

Both leases required Plaintiff to pay rent by the first day of each month. (Id. at Ex. 1 § 6; Ex. 2. § 1(E)(1)). If Plaintiff failed to pay rent by the fifth day of the month, each lease levied a late fee of five percent of the monthly rent. (Id. at Ex. 1 § 6; Ex. 2 § 1(D)). The leases provided additional legal remedies for non-payment of rent. The 2015 Lease states:

> Upon your default, we have all other legal remedies, including lease termination and summary ejectment under state statute. We may recover from you attorney's fees and all litigation costs to the extent permitted by law. In the event we file a summary ejectment lawsuit against you, we may also recover from you the highest one of the following fees (which shall be in addition to late fees, attorney's fees, and any applicable court costs): (1) Complaint Filing Fee . . . (2) Court Appearance Fee . . . [or] (3) Second Trial Fee.

(Id. at Ex. 1 § 31). Similarly, the 2018 Lease indicates:

> If Our filing of a lawsuit against you, including any summary ejectment lawsuit, establishes a default of this Agreement by You, You shall pay Us all court costs associated with such action. Should You be in default of this Agreement, and should We choose to retain an attorney to enforce such default, you shall owe Us reasonable attorney's fees, as specifically defined by N.C. Gen. Stat § 6-21.2(2) and as generally provided in N.C. Gen. Stat. § 42-46(h)(3), on the Outstanding Balance owed under this Agreement. You understand and agree that, should We choose to enforce this reasonable attorney's fees provision pursuant to N.C. Gen. Stat § 6-21.2(5), the reasonable attorney's fees shall equal the exact percentage of the Outstanding Balance specified by N.C. Gen. Stat § 6-21.2(2), and pursuant to applicable North Carolina law. You also understand and agree that the reasonable attorney's fees assessed against You may not necessarily equal, and may in fact exceed, the actual amount paid by Us to an attorney.

(Id. at Ex. 2 § 31(B)-(C)).

Plaintiff was late paying rent on several occasions under both leases. (Doc. No. 1-1 Am. Compl. ¶ 93). According to Plaintiff, when Plaintiff was late paying rent, Defendants violated the law by (1) sending misleading collection letters and (2) automatically levying certain fees on her. (Id. at ¶¶ 94, 96).

Regarding collection letters, Plaintiff alleges that Defendants wrongfully "claimed that Eviction Fees were owed prior to a North Carolina court awarding such Eviction Fees to Defendants." (Id. at ¶ 141). Likewise, some of the letters claimed that fees were due even though Defendants had not incurred any out-of-pocket expenses. (Id. at ¶ 111). Finally, Plaintiff alleges many of the letters "falsely asserted that an eviction had been filed when it had not." (Id. at ¶ 143) (citing Ex. 11–12).

Regarding levied fees, Plaintiff alleges that Defendants automatically charged filing, service, and attorneys' fees, as well as out-of-pocket expenses, even when such costs were not incurred, were not part of a lawsuit settlement, and "[e]ven though a North Carolina court never awarded any portion of the Eviction Fees to Defendants." (Id. at ¶¶ 97, 104, 107, 114, 145–46).

Although imposition of these fees was permissible under the agreed-upon 2015 and 2018 leases, they were prohibited at the time by North Carolina statute, N.C. GEN. STAT. § 42-46. See, e.g., Suarez v. Camden Prop. Tr., 818 F. App'x 204, 211–12 (4th Cir. 2020) (finding that under the pre-2018 amendment version of Section 42-46, a landlord "was not authorized to charge" a tenant the filing fee or the service fee, and that a reasonable attorney's fee could be assessed only if authorized by a separate provision of North Carolina law, such as N.C. GEN. STAT. § 6-21.2).

Consequently, Plaintiff has sued Defendants, asserting five separate causes of action: (1) violations of the North Carolina Residential Rental Agreements Act ("RRAA"), N.C. GEN. STAT.

§ 42–46 ("§ 42-46"); (2) violations of the North Carolina Debt Collection Act ("NCDCA"), N.C. GEN. STAT. § 75–50 et seq.; (3) violations of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. GEN. STAT. § 75-1.1 et seq.; (4) a petition for declaratory judgment, N.C. GEN. STAT. § 1-253 et seq.; and (5) negligent misrepresentation. (Doc. No. 1-1, ¶¶ 166–233).

Defendants now move for judgment on the pleadings, arguing the legislature has amended Section 42–46 to retroactively revoke Lockerby and the other tenants' claims.

### b. Statutory Background

Section 42-46 details the eviction-related fees, costs, and expenses a landlord is authorized to charge a tenant. Before 2009, Section 42-46 regulated landlords' ability to charge late fees, but it did not restrict their authority to charge other fees or expenses. N.C. GEN. STAT. § 42-46 (2004) (setting parameters for late fees); see, e.g., Friday v. United Dominion Realty Tr., Inc., 155 N.C. App. 671, 575 S.E.2d 532 (2003) (permitting an administrative fee to which a lessee assented).

In 2009, the General Assembly amended Section 42-46 to prohibit landlords from charging "any fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g)" of the provision. N.C. GEN. STAT. § 42-46(h)(3) (2009). The expressly authorized fees were limited to a complaint-filing fee, a court-appearance fee, a second trial fee, and reasonable attorney's fees as allowed by law. N.C. GEN. STAT. § 42-46(e)–(g), (h)(3) (2009). Relevant here, the 2009 Section 42-46 statute did not authorize landlords to charge tenants for summary ejectment expenses. N.C. GEN. STAT. § 42-46 (2009).

In 2018, the General Assembly passed a law once again amending Section 42-46 to add a

subsection explicitly authorizing landlords to charge tenants for summary ejectment expenses and reasonable attorney's fees. N.C. GEN. STAT. § 42-46(i) (2018). But the North Carolina Supreme Court ruled that these changes to the statute were not retroactive. See, e.g., Suarez, 818 F. App'x at 210.

In 2021, the legislature again amended Section 42-46. In its 2021 amendment, the General Assembly added language characterizing the authorized eviction expenses and attorney's fees as "administrative fees" and stating explicitly that "[t]his Part is effective when it becomes law and is intended to apply retroactively to all pending controversies as of that date." 2021 N.C. Sess. Laws 2021-71 (S.B. 644) § 1.2; See also Bass v. Weinstein Mgmt. Co., No. 1:20-CV-916, 2021 WL 4078507, at *1 (M.D.N.C. Sept. 8, 2021), aff'd, 56 F.4th 355 (4th Cir. 2022).

### c. Procedural Background

Defendants previously filed a Motion to Dismiss in January 2020, arguing that Section 42-46's 2018 amendment retroactively authorized Defendants to assess and collect the eviction fees from Plaintiff as out-of-pocket expenses. (Doc. No. 7).

This Court denied Defendant's Motion to Dismiss while "holding the motion under consideration pending further development of the record." (Doc. No. 19 at 4). Soon after, the Fourth Circuit decided Suarez v. Camden Prop. Tr., ruling that Section 42-46's 2018 amendment did not apply retroactively. 818 F. App'x at 206. In response to the ruling in Suarez and related cases, the General Assembly adopted the 2021 amendment. See 2021 N.C. Sess. Laws 2021-71 (S.B. 644) § 1.1. As a result of the 2021 amendment, Defendants moved for judgment on the pleadings. (Doc. No. 47). After receiving briefing on the Motion for Judgment on the Pleadings, this Court stayed this case pending the outcome of an appeal to the Fourth Circuit in a very

similar case, Bass v. Weinstein Management Company, 1:20cv916, 2021 WL 4078507 (M.D.N.C. Sept. 8, 2021). Per this Court's stay order, both parties submitted a supplemental brief once Bass was decided by the Fourth Circuit. Bass v. Weinstein Mgmt. Co., 56 F.4th 355 (4th Cir. 2022).

## II. STANDARD OF REVIEW

"A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, under Rule 12(c), a claim must be dismissed when a claimant's allegations fail to set forth a set of facts which, if true, would entitle the claimant to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). When considering a motion to dismiss, the Court is "obliged to accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiffs." Feminist Majority Found. v. Hurley, 911 F.3d 674, 685 (4th Cir. 2018). "However, the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe v. City of Charlottesville, Va., 579 F.3d 380, 385–86 (4th Cir. 2009) (internal citations and quotations omitted).

## III. DISCUSSION

At the time Defendants charged Plaintiff for eviction fees, Defendants lacked statutory authority to do so under the then-applicable version of Section 42-46. The question presented before this Court is whether the General Assembly's 2021 amendment to Section 42-46 applies retroactively without violating Plaintiff's vested rights, and thereby eliminates Plaintiff's causes

of action.

To answer this question, the Court applies North Carolina law. Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008) ("Because we are sitting in diversity, our role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue."). Under North Carolina Law, this Court first considers whether the General Assembly intended for the 2021 amendment to be retroactive. See McKiver v. Murphy-Brown, 980 F.3d 937, 955 (4th Cir. 2020) (discussing the General Assembly's intent regarding retroactivity). Second, if the legislature intended the amendment to apply retroactively, this Court must decide whether doing so would violate Plaintiff's vested rights under the North Carolina Constitution. Williams v. Atl. Coast Line R.R. Co., 153 N.C. 360, 69 S.E. 402, 403–04 (1910). If the retroactive application of a statute would destroy a vested right, courts must construe the statute prospectively regardless of the legislature's intent. Id. at 403 ("A vested right of action is property in the same sense in which tangible things are property, and is equally protected against interference.") (citation omitted).

The Fourth Circuit Court of Appeals recently decided a case nearly identical to this one, Bass v. Weinstein Mgmt. Co., 56 F.4th 355 (4th Cir. 2022), which clarified the retroactivity of Section 42-46's 2021 amendment and guides this Court's decision. In Bass, as here, "Plaintiffs were tenants of a residential property that Defendants owned and managed." Bass, 56 F.4th at 360. When plaintiffs in Bass fell behind on their rent, they "received a letter from Defendants that threatened to evict them and to charge them out-of-pocket expenses associated with the eviction proceedings" and eventually "Defendants charged Plaintiffs these out-of-pocket expenses, which Plaintiffs paid." Id. As in this case, the Bass "Plaintiffs' leases permitted Defendants to charge and collect these expenses. However, at the time, the 2009 amendment to

7

section 42-46 was in effect." Id.

Applying the two-step retroactivity analysis, the Fourth Circuit first determined that the General Assembly intended Section 42-46's 2021 amendment to apply retroactively. Id. at 361–62 ("Given this explicit language from the General Assembly, the intent of the legislature to apply the 2021 amendment retroactively could not be clearer.").

Moving on to the second step and considering vested rights, the Fourth Circuit determined that the 2021 amendment can retroactively revoke or amend a purely statutory cause of action, but it cannot retroactively revoke or amend a common-law cause of action. In other words, the 2021 amendment applies retroactively to a purely statutory cause of action – i.e., a right that is purely created by statute – without violating a plaintiff's vested rights. However, the retroactive application of the 2021 amendment to a common-law cause of action – i.e., a right that "'rests upon or grows out of the principles of common law,' including statutes that codify common-law rights" – does violate a plaintiff's vested rights. Bass, 56 F.4th at 363 (citing Williams, 69 S.E. at 403).

As the Bass Court explained, "[w]hen a right vests depends on its source." Id. at 362. "A common-law cause of action vests upon injury, as does a statutory right that codifies or governs a right founded upon well-established principles of the common law. Therefore, any statute limiting or repealing a common law right cannot apply retroactively to pending cases asserting such a right." Id. (citing Williams, 69 S.E. at 403). By contrast, a purely statutory cause of action furnishes "an inchoate right subject to be defeated by express legislative action." Id. A purely statutory cause of action is a "favor conferred by legislative act" that the legislature "may, by express terms, take away" at any time before final judgment. Id. So, a right created by statute vests at final judgment, and a legislature may revoke that right while the case is pending. In sum,

a legislature can retroactively revoke or amend a statutory cause of action, but "cannot retroactively revoke or amend a cause of action that 'rests upon or grows out of the principles of common law,' including statutes that codify common-law rights." Id.

The Fourth Circuit went on to hold that Section 42-46 creates a purely statutory right subject to legislative erasure and does not codify a right founded on well-established principles of common law. Bass, 56 F.4th at 363–64 ("Plaintiffs assert a purely statutory right under section 42-46. Thus, the 2021 amendment can apply retroactively to their claims without encroaching upon vested common law rights."). Accordingly, the Fourth Circuit determined that the 2021 amendment could retroactively apply to plaintiff's Section 42-46, NCDCA, and UDTPA claims without violating any vested rights. Id. at 364 n.5 (4th Cir. 2022).

Here, Plaintiff concedes that her NCDCA and UDTPA claims are subject to dismissal under Bass, but contends that her Section 42-46, negligent misrepresentation, and declaratory judgment claims should proceed.

### a. Section 42-46 Claim

First, Defendants argue that Plaintiff's Section 42-46 claim must be dismissed, because Section 42-46's 2021 amendment has retroactively revoked Plaintiff's claim. Plaintiff contests this, contending her Section 42-46 claim cannot be retroactively revoked because she has an inherent common-law right to recoup unlawfully collected funds. In support of this position, Plaintiff makes three points. First, Plaintiff emphasizes that there is a common-law right to recoup unlawful fees, which was recognized by the Fourth Circuit in Bass. Second, Plaintiff explains that a plaintiff may generally rely on the common-law right to recoup to enforce the plaintiff's cause of action "when a statute prohibits certain fees but does not 'provide an explicit statutory right to seek recovery' of them[….]" Id. (citing Quality Built Homes Inc. v. Town of

Carthage, 371 N.C. 60, 813 S.E.2d 218, 228 (2018)). Lastly, Plaintiff asserts that Section 42-46 does not create a right to seek recovery of any unlawfully charged fees, and therefore Plaintiff here relies on the irrevocable common-law right to recoup.

However, Plaintiff's position is at odds with Bass' clear binding precedent: Section 42-46 creates a "purely statutory right"; the NCDCA creates a "purely statutory remed[y]" which authorizes the recovery of both statutory damages, and actual damages (such as recoupment of unlawfully collected fees); and therefore the retroactive application of the 2021 amendment does not interfere with the common-law right to recoup. Bass, 56 F.4th at 364 n.5. In other words, while Section 42-46 does not create a right to seek recovery of unlawfully charged fees, the NCDCA does. Here, just as in Bass, Plaintiff has relied on this statutory remedy—not the common law—to recover unlawfully charged fees. Indeed, while Plaintiff attempts to distinguish this case from Bass by arguing that she seeks to enforce Section 42-46 through *both* statutory remedies *and* common law, Plaintiff's complaint never sought to recover the challenged fees under common law, and she cannot introduce this new cause of action now.

Because Plaintiff has relied on "a purely statutory right" and enforced it through "purely statutory remedies," Plaintiff's Section 42-46 claim is subject to revocation and the claim must be dismissed. Id.

### b. Negligent Misrepresentation Claim

Second, Defendants argue that Plaintiff has failed to state a plausible claim for negligent misrepresentation. Specifically, Defendants maintain that the facts, as set forth by Plaintiff, do not meet the elements of a negligent representation claim. In North Carolina, the tort of negligent representation occurs when (1) a party justifiably relies, (2) to its detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care.

Brinkman v. Barrett Kays & Assocs., P.A., 155 N.C. App. 738, 742, 575 S.E.2d 40, 44 (2003).

Plaintiff alleges two negligent misrepresentations by Defendants: (1) Defendants represented to Plaintiff that they were lawfully allowed to charge Plaintiff "Eviction Fees"; and (2) Defendants represented that they had "filed court papers for summary ejectment to Plaintiff and Class Members when it had not been filed." (Am. Compl. ¶ 226).

Plaintiff's first alleged misrepresentation does not satisfy the elements of a negligent misrepresentation claim. In North Carolina, a plaintiff generally cannot claim that they were misled by a misrepresentation of law. North Carolina law embraces the notion that "everyone is equally capable of determining the law, is presumed to know the law and is bound to take notice of the law." Dalton v. Dalton, 164 N.C. App. 584, 586, 596 S.E.2d 331, 333 (2004) (internal quotations omitted). Therefore, an individual "cannot be deceived by representations concerning the law or permitted to say he or she has been misled." Id. There are occasionally exceptions to this rule, such as when a confidential relationship exists between the parties at the time the misrepresentation of law occurs, or when the plaintiff was denied the opportunity to investigate the alleged misrepresentation of law. Avriett v. Avriett, 88 N.C. App. 506, 363 S.E.2d 875, aff'd, 322 N.C. 468, 368 S.E.2d 377 (1988) (discussing a confidential relationship exists between spouses.); Pinney v. State Farm Mut. Ins. Co., 146 N.C. App. 248, 256, 552 S.E.2d 186, 192 (2001) (discussing a denied opportunity to investigate alleged misrepresentations of law). However, an exception does not apply here.

Plaintiff's second alleged misrepresentation similarly does not satisfy the elements of a negligent misrepresentation claim, because Plaintiff has not shown that she justifiably relied on Defendants' summary ejectment misrepresentation. Under North Carolina law, "[r]eliance is not reasonable if a plaintiff fails to make any independent investigation or fails to demonstrate that

he was prevented from doing so." See Arnesen v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 449, 781 S.E.2d 1, 8 (2015) (quoting Dallaire v. Bank of Am., N.A., 367 N.C. 363, 369–70, 760 S.E.2d 263, 267–68 (2014)); See also Pike v. Wells Fargo Bank, N.A., No. 7:20-CV-00219-M, 2022 WL 1196694, at *5 (E.D.N.C. Apr. 21, 2022) (interpreting North Carolina law). Absent a showing of justifiable reliance, a plaintiff's negligent misrepresentation allegation is insufficient, and the claim fails. Here, Plaintiff's complaint does not assert that she made an investigation, or lacked the opportunity to make an investigation, into Defendants' summary ejectment representations. Therefore, Plaintiff's negligent misrepresentation claim must be dismissed.

### c. Declaratory Judgment Claim

Lastly, Defendants seek to dismiss Plaintiff's declaratory judgment claim. Plaintiff seeks a declaratory judgment stating: (1) that her leases are void and unenforceable due to fee provisions within the leases that violated Section 42-46 before the 2021 amendment was passed; and (2) that N.C. GEN. STAT. § 42-33 is not applicable to her leases. However, this Court is precluded from making either of those declarations.

First, this Court cannot declare that Plaintiff's leases are void and unenforceable. Under North Carolina law, a declaratory judgment is a statutory remedy. North Carolina statute grants a court the authority to "declare rights, status, and other legal relations" when an "actual controversy" exists between parties. N.C. GEN. STAT. § 1-253; Town of Pine Knoll Shores v. Carolina Water Serv., 128 N.C. App. 321, 322, 494 S.E.2d 618, 619 (1988). Because the declaratory judgment action seeks to enforce a statutory right – Section 42-46 – through a statutory remedy – Section 1-253 – the rights can, and have been, retroactively revoked before the entry of judgment, in accordance with Bass.

Second, because all of Plaintiff's other claims have been dismissed, the question regarding the applicability of N.C. GEN. STAT. § 42-33 is moot. N.C. GEN. STAT. § 42-33 provides:

> If, in any action brought to recover the possession of demised premises upon a forfeiture for the nonpayment of rent, the tenant, before judgment given in such action, pays or tenders the rent due and the costs of the action, all further proceedings in such action shall cease. If the plaintiff further prosecutes his action, and the defendant pays into court for the use of the plaintiff a sum equal to that which shall be found to be due, and the costs, to the time of such payment, or to the time of a tender and refusal, if one has occurred, the defendant shall recover from the plaintiff all subsequent costs; the plaintiff shall be allowed to receive the sum paid into court for his use, and the proceedings shall be stayed.

The 2021 amendment made the fee provisions in Plaintiff's leases retroactively lawful, foreclosing Plaintiff's other claims and thereby making Section 42-33's applicability a moot issue. Cole v. Champion Enters., Inc., 496 F. Supp. 2d 613, 632 (M.D.N.C. 2007).

## IV.  CONCLUSION

In sum, because Section 42-46's 2021 amendment applies retroactively to Plaintiff's claims and Plaintiff failed to set forth facts supporting a claim of negligent misrepresentation, Defendants' Motion for Judgment on the Pleadings, Doc. No. 47, will be granted. Accordingly, Plaintiff's Section 42-46, NCDCA, UDTPA, and negligent misrepresentation claims will be dismissed. Plaintiff's claim seeking declaratory judgment that her leases are void and unenforceable will also be dismissed, and Plaintiff's claim seeking declaratory judgment that N.C. GEN. STAT. § 42-33 is not applicable to her leases, is terminated as moot. Furthermore, because all of Plaintiff's claims have been dismissed, Plaintiff's Motion for Class Certification is terminated as moot. (Doc. No. 61).

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1) Defendants' Motion for Judgment on the Pleadings, Doc. No. 47, is **GRANTED** and Plaintiff's claims are **DISMISSED** or **TERMINATED as MOOT** in accordance with the order above.

2) Plaintiff's Motion for Class Certification, Doc. No. 61, **TERMINATED as MOOT**.

Signed: July 31, 2023

Max O. Cogburn Jr
United States District Judge